**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**ROBIN A.,**

                               **Plaintiff,**                        **22-CV-112Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                               **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**<u>DECISION AND ORDER</u>**

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #15.

**BACKGROUND**

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on December 2, 2015, alleging disability beginning February 9, 2015, at the age of 39, due to bipolar disorder, persistent depressive disorder, post traumatic stress disorder ("PTSD"), and unspecified personality disorder. Dkt. #6, p.56.

On March 27, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Susanna Roche, at an administrative hearing before Administrative Law Judge ("ALJ"), Lisa B. Martin. Dkt. #6, pp.32-55. Plaintiff testified that she was 42 years old with a high school education. Dkt. #6, p.36. She lived with her boyfriend. Dkt. #6, p.36. She suffers from depression and anxiety, which became worse after the death of her children's father in February of 2013. Dkt. #6, p.41. She experiences panic attacks two to three times per week. Dkt. #6, p.45. She has not abused substances for five years, but does use marijuana approximately twice a week because it helps with her symptoms. Dkt. #6, pp.43-44. She feels very uncomfortable around strange people or in groups and does not want to be outside in public because she feels paranoid that people are looking at her. Dkt. #6, pp.46 & 49. Sometimes it will be a week before she leaves the house. Dkt. #6, p.48. She is able to grocery shop if her boyfriend is with her. Dkt. #6, p.47. Her boyfriend works full time and takes care of most of the household, except for cooking and dishes. Dkt. #6, pp.48-49.

When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who was, *inter alia*, precluded from crowded work settings and limited to work that is routine and simple, does not require a fast assembly quota pace, does not involve more than occasional interactions with coworkers and supervisors and does not require any interaction with the public, with an off task tolerance of 3%, the VE testified that plaintiff could not perform her past relevant work but could work as a hospital cleaner or landscape specialist, each of which is a medium exertion, unskilled position. Dkt. #6, pp.51-53.

-2-

The ALJ rendered a decision that plaintiff was not disabled on May 18, 2018. Dkt. #6, pp.17-27. The Appeals Council denied review on March 19, 2019. Dkt. #6, p.6. By Decision and Order entered September 21, 2020, the Hon. John L. Sinatra, Jr. remanded the matter back to the Commissioner because there was no evidence in the record suggesting that plaintiff would be off-task up to 3% of the workday. 19-CV-638 at Dkt. #17.

On October 4, 2021, plaintiff appeared by teleconference with counsel and testified, along with VE Salvatore Garozzo, at an administrative hearing before ALJ Stephan Bell. Dkt. #6, pp.444-472. Plaintiff testified that she was terminated from work for too many call offs because of her depression and anxiety. Dkt. #6, p.451. She explained that she has "social anxiety" and can't even . . . go grocery shopping by myself." Dkt. #6, p.451. She is only able to attend therapy because her case manager picks her up from her house and waits with her until her appointment. Dkt. #6, pp.452-453. Her mother goes to medical appointments with her. Dkt. #6, p.453. She participates in a Bible study with a teacher and occasionally one other person who comes to her home. Dkt. #6, pp.454-455. She has been on medication "for years" and takes it every day so that she can function. Dkt. #6, p.454. Even with her medication, she struggles to get out of bed. Dkt. #6, p.470.

When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who could perform simple, routine and repetitive tasks and make simple work-related decisions, with occasional interaction

with supervisors and coworkers, but no interaction with the public, the VE testified that plaintiff would be able to perform her past relevant work as a hand packager and a bottle line attendant. Dkt. #6, pp.467-468. If the plaintiff was absent from work more than one day per month or off task more than 12% of the work day, the VE testified that she would be precluded from employment. Dkt. #6, pp.468-469.

The ALJ rendered a decision that plaintiff was not disabled on October 18, 2021. Dkt. #6, pp.426-437.

Plaintiff commenced this action seeking review of the Commissioner's final decision on February 7, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court

should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her alleged disability date of February 9, 2015; (2) plaintiff's persistent depressive disorder, PTSD, unspecified personality disorder, and non-severe marijuana use constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels and was limited to simple, routine, and repetitive tasks and simple work-related decisions with no more than occasional interaction with coworkers and supervisors and no interaction with the public; and (5) plaintiff was capable of performing her past relevant work as a hand packager, which is a medium exertion, unskilled position, and a bottle line attendant, which is a light exertion, unskilled position, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.426-437.

Plaintiff argues that although the ALJ gave great weight to the state agency opinion, he failed to incorporate limitations concerning plaintiff's ability to interact with others into plaintiff's RFC. Dkt. #7-1, p.9. Specifically, plaintiff argues that Dr. Bruno's opinion that plaintiff was capable of "brief and superficial contact with others" is inconsistent with the ALJ's determination that she was capable of occasional interaction with supervisors and coworkers. Dkt. #7-1, p.10. Plaintiff argues that this distinction is important given her treating psychiatrist's opinion that plaintiff had marked limitations in this area. Dkt. #7-1, p.11. Plaintiff also argues that the ALJ failed to give sufficient reasons for failing to afford controlling weight to her treating psychiatrist's opinion. Dkt. #7-1, pp.11-12.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence, including plaintiff's mental status examinations and mental health records. Dkt. #9-1, pp.7-8. The Commissioner argues that the ALJ properly weighed the opinion evidence and provided good reasons for affording Dr. McAlevey's opinions less than controlling weight. Dkt. #9-1, pp.13-17. Furthermore, the Commissioner argues that it was reasonable for the ALJ to conclude that Dr. Bruno's assessment that plaintiff was limited to "brief and superficial" interaction was consistent with the ALJ's limitation to "occasional" interaction. Dkt. #9-1, pp.8-10. In any event, the Commissioner argues that the potential jobs identified by the VE do not require significant interaction with others. Dkt. #9-1, p.12.

Plaintiff replies that it is not reasonable to interpret Dr. Bruno's "brief and superficial" limitation on interaction as allowing for occasional interaction given that the regulations define occasional as up to two hours per workday. Dkt. #10, pp.1-2.

Plaintiff's mental health treatment history with Zoar Valley Recovery & Treatment Center commenced in February of 2008. Dkt. #6, p.245. Upon release from incarceration in 2015, plaintiff returned to treatment and was noted by her psychiatrist, John B. McAlevey, in progress notes dated June 4, 2015, June 23, 2015, and January 22, 2016, to be alert and oriented, cooperative, with fluent, coherent speech that was "normal in flow, consistent with her normal thinking," with congruent and euthymic affect, intact memory and cognition, and fairly good insight and judgment, and to possess a "logical, rational, goal-directed" thought process. Dkt. #6, pp.268, 270, 272. Plaintiff

reported that things were going fairly well, although she was "a little depressed" (Dkt. #6, p.272), which is consistent with the results of depression screening conducted by plaintiff's primary care provider on July 12, 2016, which suggested mild depression. Dkt. #6, p.317. Dr. McAvlevey's assessment was that plaintiff was "doing pretty well post-incarceration" although she was experiencing "problems with unemployment and poverty" and "issues related to her history and family problems persist."  Dkt. #6, p.272. Her diagnosis was PTSD and cyclothymic symptoms versus bipolar two. Dkt. #6, p.272.

On February 22, 2016, state agency medical consultant, D. Bruno, Psy.D., opined that although plaintiff "has difficulty relating to others and dealing with stress," she "retains the mental ability to perform work involving simple tasks with brief and superficial contact [with] others." Dkt. #6, p.60. Dr. Bruno opined that plaintiff was "[n]ot significantly limited" in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes or in her ability to interact appropriately with the general public, but would be moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. Dkt. #6, p.62. The ALJ afforded Dr. Bruno's assessment great weight because it was "internally consistent [with the] reported findings and medical review, as well as consistent with the evidence as a whole generally showing the [plainitff's] history of mental health abnormalities, but overall intact memory, concentration, attention, thought processes, and a good response to treatment and medications." Dkt. #6, p.434.

On February 1, 2017, Dr. McAlevey completed a Medical Examination for Employment Assessment, Disability Screening, and Alcoholism/Drug Addiction

-8-

Determination for the New York State Office of Temporary and Disability Assistance which indicated that plaintiff was diagnosed with persistent depressive disorder and agoraphobia which was expected to be permanent, as well as PTSD in partial remission and substance use disorder in full remission. Dkt. #6, p.672. Dr. McAlevey further indicated that plaintiff was moderately limited in her ability to understand and remember instructions; carry out instructions; maintain attention/concentration; make simple decisions, interact appropriately with others; and maintain socially appropriate behavior without exhibiting behavior extremes, and was very limited in her ability to function in a work setting at a consistent pace. Dkt. #6, p.673. He also indicated that "anything stressful" was contraindicated. Dkt. #6, p.673.

Dr. McAlevey completed a Mental Impairment Questionnaire on December 1, 2017, indicating that plaintiff was mildly limited in her ability to understand, remember or apply information; concentrate, persist or maintain pace; and adapt or manage herself, and was moderately limited in her ability to interact with others. Dkt. #6, p.373. He specifically checked boxes indicating that plaintiff would have marked limitations sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; interacting appropriately with the general public; and maintaining socially appropriate behavior. Dkt. #6, p.374. Dr. McAlevey indicated that plaintiff would be moderately limited in her ability to maintain regular

attendance and be punctual within customary, usually strict tolerances; work in

coordination with or proximity to others without being unduly distracted; make simple

work-related decisions; perform at a consistent pace without an unreasonable number

and length of rest periods; ask simple questions or request assistance; respond

appropriately to changes in a routine work setting; and adhere to basic standards of

neatness and cleanliness. Dkt. #6, p.374. He indicated that plaintiff would be absent

from work more than four days per month. Dkt. #6, p.375.

In a subsequent assessment dated March 19, 2019, Dr. McAlevey declined

to assess plaintiff's mental functioning, but attached his progress note dated March 15,

2019, indicating that plaintiff "complains of significant anxiety when outside the house"

and "has trouble going to the store." Dkt. #6, p.679. Dr. McAlevey observed that plaintiff

was "quite fidgety,"but noted that she had not taken her anxiety medication. Dkt. #6,

p.679. Plaintiff reported that "her depression is moderate and stable but her anxiety has

been fairly severe ever since she was incarcerated." Dkt. #6, p.679. Her diagnosis was

updated to include social phobia or agoraphobia as well as PTSD and "significant"

persistent depressive disorder. Dkt. #6, p.679. Her mental status examination was

consistent with prior progress notes. Dkt. #6, p.679.

The ALJ afforded Dr. McAlevey's assessment some weight, explaining that

while his assessment of "mild to moderate functional limitations are generally consistent

with examinations documenting a good response to treatment, full orientation, [intact]

memory, attention, and concentration, and typically stable mood and affect . . . Dr.

McAlevey's checkmark assessments of up to marked and extreme mental limitations . . . are internally inconsistent." Dkt. #6, p.434. The ALJ noted, for example, that "Dr. McAlevey stated that the [plaintiff] has moderate functional limitations in interacting with others, but then states that the [plaintiff] is markedly limited in getting along with co-workers or peers." Dkt. #6, p.434. The ALJ explained that the latter "assessment is inconsistent with the record as a whole documenting mild to moderate limitations overall, including treatment records." Dkt. #6, p.434.

The ALJ also noted that plaintiff's most recent mental health treatment providers, Jane Kou, M.D., and Betsy McDonnell, Ph.D., completed an assessment dated March 22, 2021 indicating that plaintiff was "actively engaged in psychotherapy and has demonstrated good progress," but declined to assess plaintiff's mental abilities and aptitudes or her ability to engage in full-time competitive employment on a sustained basis. Dkt. #6, p.669.

With the exception of a three-day stay at Lakeshore Hospital Behavioral Health Unit following a relapse with crack cocaine in September of 2019, plaintiff's mental health records subsequent to Dr. McAlevey's last assessment indicate consistent ongoing treatment consisting of discussions regarding plaintiff's living situation and her relationships with family, boyfriends and friends, with mental status examinations substantially similar to those recorded previously. On December 20, 2019, for example, plaintiff reported that her mood was "good" and that "everything's a lot calmer this year" because of her new housing situation. Dkt. #6, p.1104. On January 31, 2020, plaintiff

reported that she "cut back on her caffeine and . . . is less anxious." Dkt. #6, p.1096. On

February 28, 2020, plaintiff indicated that she was looking forward to Spring so she

could get out and exercise more. Dkt. #6, p.1090. On March 20, 2020, plaintiff "reported

that her panic attacks are at a minimum, and she is doing fairly well." Dkt. #6, p.1084.

On April 24, 2020, plaintiff reported that "[e]verything's going really good." Dkt. #6,

p.1074. On May 15, 2020, plaintiff reported that "everything's good." Dkt. #6, p.1064. On

June 5, 2020, plaintiff reported that "[t]hings have been pretty good." Dkt. #6, p.1056. On

June 26, 2020, plaintiff reported increased anxiety following the death of her father and

on July 1, 2020, her medication was adjusted due to "increased anxiety probably

secondary to psychosocial stressors." Dkt. #6, pp.1049 & 1051. On July 3, 2020, plaintiff

reported that the medication was easing her anxiety and that she was "feeling pretty

good." Dkt. #6, p.1047. On July 24, 2020, plaintiff reported that the medication had

"helped to settle down her anxiety" and that she was going to the beach on a daily basis.

Dkt. #6, p.1043. On July 31, 2020, plaintiff reported that her "panic attacks are pretty

much gone." Dkt. #6, p.1039. On October 19, 2020, Dr. McAlevey noted that plaintiff "is

thought to be unable to work at this time due to anxiety," however, plaintiff reported that

"she was not depressed and her anxiety was manageable with the medications." Dkt. #6,

pp.1015-1016.


On March 5, 2021, plaintiff reported that she was looking forward to

spending time with a friend that afternoon and had made plans to move out of the house

she shared with her boyfriend and, if her disability benefits did not come through, she

would move in with a friend. Dkt. #6, p.981. On March 19, 2021, plaintiff reported that

she felt "calm and relaxed" and "stress free" following her move out of the home she shared with her boyfriend and in with a friend. Dkt. #6, p.977. On April 2, 2021, plaintiff's therapist suggested decreasing the frequency of therapy since plaintiff "has reported doing pretty well for a while." Dkt. #6, p.976.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the length, nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (f)(2). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See. Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

-13-

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record, but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's  conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

Dr. Bruno's opinion that plaintiff's contact with others should be brief and superficial must be considered in conjunction with his concurrent opinion that she was not significantly limited in her ability to get along with coworkers but would be moderately

-14-

limited in her ability to interact with supervisors. This latter opinion is consistent with Dr. McAlevey's February 1, 2017 opinion that plaintiff was moderately limited in her ability to interact appropriately with others and his December 1, 2017 opinion that plaintiff was moderately limited in her ability to interact with others. As the ALJ noted, it is inconsistent with Dr. McAlevey's December 1, 2017 assessment that plaintiff would have marked limitations accepting instructions and responding appropriately to criticism with supervisors and getting along with coworkers. The ALJ recognized the discrepancy between Dr. McAlveney's assessment of plaintiff's moderate functional limitation with respect to her ability to interact with others and his assessment of marked limitations in mental abilities and aptitudes pertaining to this functional area and appropriately relied upon the other mental source statements, as well as plaintiff's treatment records, to determine that plaintiff's limitation in this functional area was moderate. *See Rachel G. v. Comm'r of Soc. Sec.*, 2024 WL 3218251, at *4 (June 28, 2024) (recognizing that it was within ALJ's discretion to determine RFC based upon opinions from state agency reviewing consultant, treating providers, and other evidence of record); *Samantha T. v. Comm'r of Soc. Sec.,* 20-CV-201, 2021 WL 3566597, at *3 (W.D.N.Y. Aug. 12, 2021) (recognizing that "an ALJ is free to rely on portions of several opinions to craft the RFC."). Moderate limitations in an individual's ability to interact with others is fully consistent with a limitation to occasional contact. *Michael G. v. Comm'r of Soc. Sec.*, 23-CV-767, 2024 WL 3616282, at *5 (W.D.N.Y. July 31, 2024); *See Alicia T. v. Comm'r of Soc. Sec.*, 21-CV-6529, 2023 WL 4999844, at *5 ("A moderate limitation in social interaction or ability to interact appropriately with the public, coworkers, or supervisors can be accommodated by a restriction of no more than occasional interaction.").

The Court recognizes that there is a divergence of opinion as to whether a limitation to brief and superficial interaction with others is the functional equivalent of a limitation to occasional contact. *Michael G. v. Comm'r of Soc. Sec.*, 23-CV-767, 2024 WL 3616282, at *5 (W.D.N.Y. July 31, 2024). However, even accepting that there is a distinction between limitations for superficial interaction, which focuses on the quality of interaction, and limitations for occasional contact, which focuses on the quantity of time spent interacting, *Maria M. v. Comm'r of Soc. Sec.*, 21-CV-962, 2024 WL 32210, at *4 (W.D.N.Y. Jan. 3, 2024), it is a distinction without a difference where, as here, the jobs identified by the VE are compatible with both qualitative and quantitative limitations on plaintiff's ability to interact with others. Both the hand packager position, which has a DOT code of 920.587-018, and the bottle line attendant position, which has a DOT code of 920.687-042, are rated as a Level 8 for social interaction, which is compatible with an RFC limiting a plaintiff to only superficial contact. *See Joseph N. v. Comm'r of Soc. Sec.*, 23-CV-652, 2024 WL 4217371, at *14 (N.D.N.Y. Aug. 29, 2024)(collecting cases); *Jason S. v. Comm'r of Soc. Sec.*, 2023 WL 4991928, at *4 (W.D.N.Y. Aug. 4, 2023) ("Courts have determined that level 8 interaction is compatible with an RFC limiting an individual to superficial contact with coworkers, supervisors, and the public.") (internal quotation omitted). Thus, the ALJ's determination that plaintiff was capable of performing her past relevant work as a hand packager and bottle line attendant is supported by substantial evidence.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #7), is denied and the Commissioner's motion for judgment on the pleadings (Dkt.

#8), is granted.


The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**    **Buffalo, New York**
        **January 29, 2025**

                        **s/ H. Kenneth Schroeder, Jr.**
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**